2120 - Served   2220 - Not Served   2620 - Sec. of State
2121 - Alias Served   2221 - Alias Not Served   2621 - Alias Sec. of State

Summons (This form replaces CCM 0646, CCM1 0646, CCM1 0651, CCMD 0648, and CCMD 0649-2 thru 6)            (10/06/09) CCM N649

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### FIRST   MUNICIPAL DISTRICT

**Name All Parties**

KAITLIN VERBER and BRAD VERBER,

_____ **Plaintiff(s)**

v.

CITIBANK, NA and CLINICAL ASSIST, LTD. d/b/a BLACK BEAR ACADEMY,

_____ **Defendant(s)**

CITIBANK, NA, 701 East 60th Street North, Sioux Falls, South Dakota 57104

_____ **Address of Defendant(s)**

Case No. 20121154739
CALENDAR/ROOM 1112
Statutory Action

Amount Claimed: $ $15,000 + attorney's fees/costs

Appearance Filing/Return Date: October 15, 2012

Status Date: _____

Trial Date: _____

Time: _____ Room: _____

Please serve as follows: ☐ Certified Mail  ☐ Sheriff Service  ☑ Alias (Plaintiff check one)

## SUMMONS

To each Defendant:

**YOU ARE SUMMONED and required:**

1. To file your written appearance by yourself or your attorney and pay the required fee in:

☑ District 1: Richard J. Daley Center; 50 West Washington, Room 602; Chicago, IL 60602
☐ District 2: 5600 Old Orchard Rd., Rm 136; Skokie, IL 60077        ☐ District 5: 10220 S. 76th Ave., Rm 121; Bridgeview, IL 60455
☐ District 4: 1500 Maybrook Dr., Rm 236; Maywood, IL 60153

on _____ October 15 _____, 2012 _____, between the hours of 8:30 a.m. and 2:30 p.m.;

☐ District 3: 2121 Euclid, Rm 121; Rolling Meadows, IL 60008    ☐ District 6: 16501 S. Kedzie Pkwy., Rm 119; Markham, IL 60428
on _____, _____, before 9:00 a.m.

2. File your answer to the complaint before 9:00 a.m. as required by the applicable subsections of Paragraph 3 or 4 in the NOTICE TO THE DEFENDANT on the reverse side.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service, and not less than 3 days before the day for appearance. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 3 days before the day for appearance.

Atty. No.: 41106            THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

Name: Edelman, Combs, Latturner & Goodwin, LLC

Atty. for: Plaintiffs

Address: 120 S. LaSalle St., Suite 1800

City/State/Zip: Chicago, Illinois 60603

Telephone: (312) 739-4200

WITNESS, _____,

_____

DOROTHY BROWN, Circuit Court Clerk

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person)

SEE REVERSE SIDE

** Service by Facsimile Transmission will be accepted at: _____
(Area Code)      (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILL

EXHIBIT
A

Atty. No. 41106

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | | |
|---|---|---|
| KAITLIN VERBER and BRAD VERBER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Amount Claimed: $15,000 plus |
| CITIBANK, NATIONAL ASSOCIATION, | ) | attorneys' fees and costs. |
| and CLINICAL ASSIST, LTD., | ) | |
| doing business as BLACK BEAR ACADEMY, | ) | Return Date: October 15, 2012 |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

### INTRODUCTION

1.      Plaintiffs bring this action to secure redress from unlawful contracting and

credit practices by a school and a credit card issuer.

### PARTIES

2.      Plaintiffs Kaitlin Verber and Brad Verber are husband and wife and

residents of Cook County, Illinois.

3.      Defendant Citibank, National Association ("Citi") is a federally chartered

corporation with principal offices at 701 East 60th Street, North Sioux Falls, South Dakota

57104. It does business in Illinois. It has an office at 11 South LaSalle St., Chicago, Illinois

60603. It is a major issuer of credit cards, with millions of accounts, and does business as

"Citicards." It is a creditor as defined in the Truth in Lending Act and Regulation Z.

4.      Defendant Clinical Assist, Ltd., doing business as Black Bear Academy

("Black Bear"), is an Illinois corporation that conducts a preschool at 1801 W. Byron, Chicago,

1

Illinois 60613.

## FACTS

5.  On or about March 28, 2012, plaintiffs signed an enrollment contract for their minor son with defendant Black Bear. A copy of the contract is attached as Exhibit A.

6.  On the same date, plaintiffs authorized Black Bear to charge a $1,000 deposit to Plaintiffs' Citi credit card account.

7.  On April 23, 2012, plaintiffs cancelled the enrollment agreement.

8.  On information and belief, defendant Black Bear, suffered no damage from the cancellation.

9.  Two months later, on June 27, 2012, defendant Black Bear used the credit card information provided for the deposit to charge plaintiffs' Citi credit card for two charges, one in the amount of $7,000.00 and one in the amount of $2,563.00.

10.  On information and belief, defendant Black Bear, submitted two charge slips without authority do so.  Afterwards, it mailed plaintiffs Exhibit B.

11.  Whether plaintiffs had rightfully cancelled the agreement or not, no payments were due under it until August 1, 2012, November 1, 2012, and February 1, 2013.  See enrollment terms posted on the Black Bear web site (Exhibit C).

12.  Defendant Black Bear had no right to submit any charges to plaintiffs' credit card on June 27, 2012.

13.  By submitting the charges, defendant Black Bear represented to Citi that the charges were authorized by plaintiffs.

14.  Such representation was false.

2

15.     Plaintiffs disputed the two charges.  A copy of plaintiffs' dispute is attached as Exhibit D.

16.     Defendant Black Bear, admitted that the two charges were not authorized by plaintiffs.  (Exhibit E)

17.     Citi provisionally credited plaintiffs' account for the $9,563 but then reversed the credit and charged the $9,563 to plaintiffs' account.  (Exhibits F and G)

18.     Exhibits F and G do not address plaintiffs' complaint that, regardless of whether they owed anything to Black Bear as a matter of contract, they did not authorize the submission of the two charges to their credit card.

19.     Black Bear, claimed that plaintiffs were obligated to pay the $9,563 under the terms of the contract, regardless any loss from or savings due to plaintiffs' cancellation.

20.     The $9,563 represents an unreasonable liquidated damages provision and is not legally enforceable.  Anticipatory damages provisions are only legal and enforceable when they are proportionate to an estimated loss. *Hidden Grove Condominium Ass'n. v. Crooks*, 318 Ill. App. 3d 945, 947, 744 N.E.2d 305, 307 (3d Dist. 2001)("An agreement setting damages in advance of a breach is an unenforceable penalty unless: (1) the amount so fixed is a reasonable forecast of just compensation of the harm that is caused by the breach; and (2) the harm caused is difficult or impossible to estimate."); *Gunderson v. Park West Montessori, Inc.*, 24 Misc. 3d 1242A; 901 N.Y.S.2d 899 (Sup.Ct. 2009).

## COUNT I – TRUTH IN LENDING ACT

21.     Plaintiffs incorporate paragraphs 1-20.

22.     This claim is against Citi.

3

23.     Citi violated 15 U.S.C. §1666 by (a) refusing to reverse the $9,563 charges and (b) failing to process their dispute as required by 15 U.S.C. §1666.

24.     Section 1666 provides:

§ 1666. Correction of billing errors

(a) Written notice by obligor to creditor; time for and contents of notice; procedure upon receipt of notice by creditor. If a creditor, within sixty days after having transmitted to an obligor a statement of the obligor's account in connection with an extension of consumer credit, receives at the address disclosed under section 127(b)(10) [15 USCS § 1637(b)(10)] a written notice (other than notice on a payment stub or other payment medium supplied by the creditor if the creditor so stipulates with the disclosure required under section 127(a)(7)) [15 USCS § 1637(a)(7)]) from the obligor in which the obligor—

     (1) sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor,

     (2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and

     (3) sets forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error,

the creditor shall, unless the obligor has, after giving such written notice and before the expiration of the time limits herein specified, agreed that the statement was correct—

     (A) not later than thirty days after the receipt of the notice, send a written acknowledgment thereof to the obligor, unless the action required in subparagraph (B) is taken within such thirty-day period, and

     (B) not later than two complete billing cycles of the creditor (in no event later than ninety days) after the receipt of the notice and prior to taking any action to collect the amount, or any part thereof, indicated by the obligor under paragraph (2) either--

     (i) make appropriate corrections in the account of the obligor, including the crediting of any finance charges on amounts erroneously

4

billed, and transmit to the obligor a notification of such corrections and the creditor's explanation of any change in the amount indicated by the obligor under paragraph (2) and, if any such change is made and the obligor so requests, copies of documentary evidence of the obligor's indebtedness; or

(ii) send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was correctly shown in the statement and, upon request of the obligor, provide copies of documentary evidence of the obligor's indebtedness. In the case of a billing error where the obligor alleges that the creditor's billing statement reflects goods not delivered to the obligor or his designee in accordance with the agreement made at the time of the transaction, a creditor may not construe such amount to be correctly shown unless he determines that such goods were actually delivered, mailed, or otherwise sent to the obligor and provides the obligor with a statement of such determination.

After complying with the provisions of this subsection with respect to an alleged billing error, a creditor has no further responsibility under this section if the obligor continues to make substantially the same allegation with respect to such error.

(b) Billing error. For the purpose of this section, a "billing error" consists of any of the following:

*(1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.*

(2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.

*(3) A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.*

(4) The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.

(5) A computation error or similar error of an accounting nature of the creditor on a statement.

5

(6) Failure to transmit the statement required under section 127(b) of this Act [15 USCS § 1637(b)] to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.

(7) Any other error described in regulations of the Bureau.

(c) Action by creditor to collect amount or any part thereof regarded by obligor to be a billing error. For the purposes of this section, "action to collect the amount, or any part thereof, indicated by an obligor under paragraph (2)" does not include the sending of statements of account, which may include finance charges on amounts in dispute, to the obligor following written notice from the obligor as specified under subsection (a), if–

(1) the obligor's account is not restricted or closed because of the failure of the obligor to pay the amount indicated under paragraph (2) of subsection (a), and

(2) the creditor indicates the payment of such amount is not required pending the creditor's compliance with this section.

Nothing in this section shall be construed to prohibit any action by a creditor to collect any amount which has not been indicated by the obligor to contain a billing error.

(d) Restricting or closing by creditor of account regarded by obligor as containing a billing error. Pursuant to regulations of the Bureau, a creditor operating an open end consumer credit plan may not, prior to the sending of the written explanation or clarification required under paragraph (B)(ii), restrict or close an account with respect to which the obligor has indicated pursuant to subsection (a) that he believes such account to contain a billing error solely because of the obligor's failure to pay the amount indicated to be in error. Nothing in this subsection shall be deemed to prohibit a creditor from applying against the credit limit on the obligor's account the amount indicated to be in error.

(e) Effect of noncompliance with requirements by creditor. Any creditor who fails to comply with the requirements of this section or section 162 [15 USCS § 1666a] forfeits any right to collect from the obligor the amount indicated by the obligor under paragraph (2) of subsection (a) of this section, and any finance charges thereon, except that the amount required to be forfeited under this subsection may not exceed $ 50. (Emphasis added)

6

25.     Plaintiffs are also entitled to recover the $9,563 charges under 15 U.S.C. §1666i, which provides:

> § 1666i.  Assertion by cardholder against card issuer of claims and defenses arising out of credit card transaction; prerequisites; limitation on amount of claims or defenses
>
> (a) Claims and defenses assertable. Subject to the limitation contained in subsection (b), a card issuer who has issued a credit card to a cardholder pursuant to an open end consumer credit plan shall be subject to all claims (other than tort claims) and defenses arising out of any transaction in which the credit card is used as a method of payment or extension of credit if (1) the obligor has made a good faith attempt to obtain satisfactory resolution of a disagreement or problem relative to the transaction from the person honoring the credit card; (2) the amount of the initial transaction exceeds $50; and (3) the place where the initial transaction occurred was in the same State as the mailing address previously provided by the cardholder or was within 100 miles from such address, . . .
>
> (b) Amount of claims and defenses assertable. The amount of claims for defenses asserted by the cardholder may not exceed the amount of credit outstanding with respect to such transaction at the time the cardholder first notifies the card issuer or the person honoring the credit card of such claim or defense. For the purpose of determining the amount of credit outstanding in the preceding sentence, payments and credits to the cardholder's account are deemed to have been applied, in the order indicated, to the payment of: (1) late charges in the order of their entry to the account; (2) finance charges in order of their entry to the account; and (3) debits to the account other than those set forth above, in the order in which each debit entry to the account was made.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and against Citi for:

(1)     Statutory damages ($5,000 under 15 U.S.C. §1640 plus $50);

(2)     Actual damages;

(3)     Attorney's fees, litigation expenses and costs of suit (15

7

U.S.C. §1640); and

    (4)    Such other and further relief as the Court deems proper.

## COUNT II – BREACH OF CONTRACT

26.    Plaintiffs incorporate paragraphs 1-20.

27.    This claim is against Black Bear.

28.    Black Bear breached its contract by debiting, without authorization, plaintiff's credit card account prior to the time any amounts were due.

29.    In addition, the $9,563 constitutes an unreasonable liquidated damages provision.

30.    Plaintiffs were damaged in the amount of $9,563 and interest thereon.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and against Black Bear for:

    (1)    Actual damages;

    (2)    Costs of suit; and

    (3)    Such other and further relief as the Court deems proper.

## COUNT III – CONSUMER FRAUD ACT

31.    Plaintiffs incorporate paragraphs 1-20.

32.    This claim is against Black Bear.

33.    Black Bear engaged in unfair and deceptive acts and practices, in violation of 815 ILCS 505/2, by:

    a.    Imposing an unreasonable liquidated damages provision in a form contract; and

8

b.     Collecting the $9,563 liquidated damages by falsely representing to

plaintiffs' credit card issuer, Citi, that plaintiffs had authorized

such amount to be charged to their credit card, when that was not

the case.

34.     The means used to collect the $9,563 amount to theft by deception and

warrant the imposition of substantial punitive damages.

35.     Plaintiffs were damaged in the amount of $9,563 and interest thereon.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and

against Black Bear for:

(1)     Actual damages;

(2)     Punitive damages;

(3)     Attorney's fees, litigation expenses and costs of suit (815

ILCS 505/10a); and

(4)     Such other and further relief as the Court deems proper.

_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 41106 (Cook)

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 41106 (Cook)

10

<u>EXHIBIT A</u>





Redacted




# Black Bear Academy
## 2012-2013
## Enrollment Contract

Student's Name:   Beckett Verber
Date of Birth:   ████████

Current Program   Three Hour Two's with Ms. Megan

Program:   Three Hour Three's

Please note your first preference of days and frequency:
Days: Monday   **Tuesday   Wednesday   Thursday**     Friday

Number of days:   Three Days (Tues, Wed and Thurs)

******Please note: Our 3"s program moving into midyear IKI transition is a *mandatory* three days, Tuesday, Wednesday and Thursday. For the Language Enrichment and Therapeutic programs, please list both your **first choice of days** and the **number of days** you would like your child to attend.
School Year:   2012-2013
I/we wish to enroll my/our child in Black Bear Academy for the 2012 – 2013 academic year and agree to the following terms:

## CONDITIONS OF ENROLLMENT
Enrollment is for the entire school year because the Schools' expenses are incurred on an annual basis. Therefore, I/we agree there will be no refund of payment or cancellation of unpaid obligations. I/we understand that I/we are responsible for paying all charges for my child when due.

**This agreement may be cancelled in writing up to March 31st, 2012, after which date I/we will be liable for the full year's tuition and all other expenses incurred.**

The School reserves the right to refuse the enrollment of my child prior to March 31, 2012 or to require my child's withdrawal at any time during the 2012-2013 school year if the behavior or academic achievement does not meet the Schools' standards. Enrollment for the next year is based on successful completion of the current school year.

I/we acknowledge that my child **will not be permitted to attend class if the account is in arrears.**
In signing this Enrollment Agreement, I/we understand that all documentation will be withheld until full payment is made. I/we commit myself/ourselves to support the philosophy, rules, and regulations of Black Bear Academy.

## PAYMENT OF TUITION
I/we understand that partial payment of tuition and fees does not constitute a partial contract. I/we understand that tuition charged to my child' account may be paid in accordance with school policy and Tuition Express.

Ph. 773-244-0700      www.blackbearacademy.com      Fax: 773-244-0200

2

Late fees will apply for late payments. A non-refundable deposit of $1000.00 is due at the time of contract submission.
This deposit will be applied towards your fall tuition, class fees, administrative, testing and materials fee.

**ENROLLMENT DEPOSIT**
A deposit of $1,000 is enclosed with this Enrollment Agreement.
**Deposits are due no later than March 31, 2012**

Please charge my account for my deposit through Tuition Express.
**This fee will be charged March 31, 2012**

**In order to reserve a place for your child, the School must receive the Re-Enrollment Agreement and the deposit no later than March 31, 2012.** This deposit will be credited to fees and tuition for the 2012-2013 school year and is neither refundable nor transferable. The deposit is made payable to Black Bear Academy regardless of which program is attended and will be credited to my child's account. Black Bear Academy *does not guarantee a spot for your child after the March 31, 2012 deadline*. **The Academy reserve the right to refuse any contract received after March 31, 2012.**

**PUBLICATIONS RELEASE**
I/we permit my child's/family's photograph, work, or quotations, in whole or in part, to be used for purposes of publicity, illustrations, publications, and the Black Bear Academy website and/or multi-media productions, as authorized by the Academy. I/we further permit the Schools to publish a directory including information provided by my/our family. This directory will be distributed to every school family and staff member. The directory is not for outside distribution or use.

**FIELD TRIP PERMISSION**
I/we request that the Schools allow my child to participate in all field trips that occur during the school year. Trips may include, but are not limited to, recess at area parks, museums, theatres and summer camp trips. All school rules and policies apply on field trips.

**Parent(s)/Guardian(s) Electronic Signature(s)**
The electronic signature below and its related fields are treated by Black Bear Academy like a physical handwritten signature on a paper form.

*I/we have read this Enrollment Agreement carefully and agree to all of its terms.*

All signatures are necessary. Student will not be admitted to class until agreement is signed.

Black Bear Academy Re-Enrollment Contract for

*I, Kaitlin Verber agree* - **Yes**
*Electronic Electronic Signature: /s/ Kaitlin Verber*
*Date:   March 28, 2012*

*I, Brad Verber agree* - **Yes**
*Electronic Signature: /s/ Brad Verber*
*Date: March 28, 2012*

For BBA staff use only:          Date Submitted:                    Staff Initials:

Ph. 773-244-0700          www.blackbearacademy.com          Fax: 773-244-0200

<u>EXHIBIT B</u>

27281

Redacted





Kaitlin R. Verber

50640260423

Black Bea Academy
1801 W Byron
Chicago, IL 60613
(773) 244-0700

Redacted

**Clinical Assist, Ltd**

1801 W. Byron Ave.
Chicago, IL 60613

773-244-0500
info2012@blackbearacademy.com
TaxID: 36-3936541

Kaitlin R Verber


| | VERBER | |
|---|---|---|
| From: | 6/27/2012 | |
| To: | 7/22/2012 | |
| | Page 1 | |

Beginning Statement Balance:         0.00

| User | Post Date | Description | Comment | Charge | Credit | Balance |
|---|---|---|---|---|---|---|
| 003 | 6/27/2012 | Pmt Tuition Express: CC POS | TE POS 28898P | | | |
| 003 | 6/27/2012 | Pmt Tuition Express: CC POS | TE POS 82663P | | 7,000.00 | -7,000.00 |
| 003 | 6/27/2012 | Application Fee | Paid with Deposit | | 2,563.00 | -9,563.00 |
| 003 | 6/27/2012 | Administrative Fee | Paid with Deposit | | | -9,563.00 |
| 003 | 6/27/2012 | 3's All Year (1) - 2012.13 | 3hr 3's Tues,Wed,&Thur minu | 9,563.00 | | -9,563.00 |
| | | | | | | 0.00 |
| | | | Total | 9,563.00 | 9,563.00 | 0.00 |

7/16/2012

**EXHIBIT C**

From the Director | Black Bear Academy                    Page 1 of 1

You will finalize your schedule, mornings and afternoons, for the entire school year and return all forms by August 1, 2012.

At this time we will summarize your choices, calculate fees and tuition, apply your deposit, and determine your final three payments due August 1st, November 1st and February 1st.
2013

<u>EXHIBIT D</u>

Redacted

July 16, 2012

Bradley and Kaitlin Verber



Citi® Cards
Customer Service Team
P.O. Box 6013
Sioux Falls, SD 57117-6013

RE:      Disputed Transactions Described Below In Connection With Account Number:
         ████████7369

| Dates | Amounts | Descriptions |
|-------|---------|--------------|
| 6/27/2012 | $7000.00 | Black Bear Academy  773-244-0700 IL |
| 6/27/2012 | $2563.00 | Black Bear Academy  773-244-0700 IL |

To Citi® Cards Customer Service Team:

Thank you for your response to our disputed charges from Black Bear Academy (the "Merchant") described above.  You have asked us for the following additional information:

1.   The original contract for services with the Merchant;
2.   Dates that we have contacted the Merchant since the disputed transactions; and
3.   Any proof that we may have showing the Merchant accepted cancellation.

   1.  The Original Contract

Per your request, please find enclosed the contract for services with the Merchant.  Please note that the contracted services are not scheduled to be provided until September 2012.  We provided notice of cancellation on April 23, 2012, forfeiting a $1,000.00 deposit with the Merchant and allowing the Merchant sufficient opportunity sell the contracted services to an alternate customer.  We have not and will not receive any service, product or benefit of any kind whatsoever for the disputed charges.

Furthermore, the Merchant has had full knowledge of our cancellation (details of such contact follow).  As a result, the Merchant knowingly has charged us for a service that it will never have to provide, seeking to enrich itself in the absence of providing any service, product or benefit of any kind whatsoever.

2. Contact With the Merchant

*April 23, 2012 - Notice of Cancellation*

On April 23, 2012, we notified the Merchant of the cancellation. Please find enclosed emails to this effect and the Merchant's response. We cancelled the contract for services on April 23, 2012 that were not scheduled to begin until September 2012. We have not and will not receive any service, product or benefit of any kind for the disputed charges.

*July 16, 2012 - Merchant's Admission of Unauthorized Credit Card Charges of $7000.00 and $2563.00 on June 27, 2012*

On July 16, 2012, the Merchant admitted that we did not authorize the charges to our credit card (see email enclosed). The $7,000.00 and $2563.00 amounts at issue here are for 2012-2013 Tuition Payments (not the $1,000.00 non-refundable deposit). We never authorized 2012-2013 tuition charges to our credit card or payments of such amounts by CitiCard/MasterCard. The Merchant did not provide us an invoice. We did not complete a Tuition Express form, or other similar credit card authorization form, for the 2012-2013 school year. There is no express authorization of 2012-2013 Tuition Payments in the contract like the authorization of the $1,000.00 deposit described below. In addition, we were charged approximately five weeks prior to the scheduled August 1, 2012 payment date.

On July 16, 2012, in the same email that the Merchant admitted we did not authorize the credit card charges, the Merchant admitted that it had not sent us an invoice prior to charging our credit card on June 27, 2012 for the tuition payments (see email enclosed). The Merchant also indicated that other parents would be charged tuition payments on August 1, 2012, November 1, 2012 and February 1, 2013, the scheduled payment dates set forth on the Merchant's website (see enclosed emails and materials, printed from the Merchant's website on July 16, 2012), while the Merchant charged our credit card on June 27, 2012. While the Merchant characterizes these unauthorized charges as "prudent", we believe that it was self-help. We did not authorize the June 27, 2012 charges to our credit card and we did not agree to incur interest charges when other parents will be charged by the Merchant in quarterly installments on August 1, 2012, November 1, 2012 and February 1, 2013.

The Merchant's charges on June 27, 2012, therefore, were admittedly unauthorized, have been made contrary to the Merchant's own publicly stated policies, and were made with full knowledge that it will never have to provide any service, product or benefit to us of any kind whatsoever.

*Authorization of Payment by CitiCard of $1,000.00 Deposit On April 2, 2012*

We signed the contract on March 28, 2012 and payment of the $1,000.00 deposit was made by CitiCard/MasterCard on April 2, 2012 per the following authorization we expressly made in the contract:

2

"A non-refundable deposit of $1,000 is due at the time of contract submission...Please charge my account for my deposit...**This fee will be charged March 31, 2012.**"

There was no express authorization in the contract like this for the disputed 2012-2013 Tuition Payments.

*No Benefit for the Disputed Charges*

As described above, the contract is for preschool services scheduled to begin in September 2012. We cancelled the contract on April 23, 2012, approximately five months in advance, also forfeiting a $1,000.00 deposit with the Merchant and allowing the Merchant sufficient opportunity sell the contracted services to an alternate customer. We have not and will not receive any service, product or benefit of any kind whatsoever for the disputed charges. Furthermore, the Merchant has full knowledge of our cancellation, and as a result the Merchant knowingly has charged us for a service that it will never have to provide.

*No Detriment to the Merchant*

On May 17, 2012, the Merchant sent an email that the enrollment process was not yet completed and that employment contracts for teachers had not yet been offered (see enclosed). This was approximately three weeks after our April 23, 2012 notice of cancellation. As this email demonstrates, the Merchant continued to market services to other potential customers following our cancellation, and the Merchant retained the ability to increase or decrease its expenditures through the extension of employment contracts for teachers. Thus there was no detriment to the Merchant as a result of our cancellation. Furthermore, we believe that the Merchant has located an alternate customer for the services it initially contracted with us to provide.

Thus, the Merchant has incurred no detriment of any kind, and instead is seeking to unilaterally enrich itself in the absence of providing any service, product of benefit of any kind whatsoever.

3. Merchant's Acceptance of Cancellation

Please see the email correspondence referenced above as evidence that the Merchant was aware of and acknowledged our cancellation of the contract. Because we never authorized the Merchant at any time to charge our credit card for the disputed transactions, because we never received an invoice for the disputed charges, because the Merchant's charges were admittedly unauthorized and made in violation of its own online stated policy, because there has been no detriment of any kind whatsoever to the Merchant, because the Merchant has mitigated any potential harm from our cancellation by selling the contracted services to another customer, because the Merchant has submitted the charges for services it knows it will never have to provide, and because we have not and will not ever receive any services, product or benefit of any kind whatsoever for the charges, the charges are improper, unauthorized, and should be denied.

3

Redacted

Please let me know if you need additional information or do not hesitate to contact me at ▓▓▓ ▓▓▓▓▓▓ to discuss this matter further.

Note also that I have requested to speak with attorneys at CitiCard and MasterCard before you make a decision on this dispute.

Kind regards

Kaitlin Verber

Encls\

4

**EXHIBIT E**

XFINITY Connect

Page 1 of 2

Redacted

**XFINITY Connect**

kaitlin.verber@comcast.ne

± Font Size ±

# Re: BBA enrollment contract

From : kblack@blackbearacademy.com

Subject : Re: BBA enrollment contract

Mon, Jul 16, 2012 04:33 PM

To : Kaitlin Reidy Verber ███████████████████ , kblack@blackbearacademy.com

Cc : Maureen Black <2missmo@blackbearacademy.com>, Annie Hernandez
<ahernandez@blackbearacademy.com>, Brad Verber ████████████

You didn't "authorize" the charge; we did not "authorize" your contract termination. When you enrolled you never mentioned you might pull out of the enrollment obligation, or had you, we wouldn't have accepted such a conditional enrollment.

Kevin Black
Co-Executive Director
Black Bear Academy

This email is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and confidential. If the reader of this email message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is prohibited. If you have received this email in error, please notify the sender and destroy/delete all copies of the transmittal. Thank you.

-----Original Message-----
From: Kaitlin Reidy Verber ███████████
Sent: Monday, July 16, 2012 11:09 AM
To: kblack@blackbearacademy.com
Cc: 'Maureen Black', 'Annie Hernandez', 'Brad Verber'
Subject: Re: BBA enrollment contract

We received no invoice from you prior to the charge. We did not authorize the one time charge to our credit card. We are unwilling to incur interest charges to pay via credit card installments when other parents will be charged by Black Bear in quarterly installments on August 1, November 1 and February 1. You may believe this was "prudent", but it was merchant self-help and not authorized by us, the credit card holder.

From: kblack@blackbearacademy.com
To: "Kaitlin Reidy Verber" ███████████████████ , kblack@blackbearacademy.com
Cc: "Maureen Black" <2missmo@blackbearacademy.com>, "Annie Hernandez" <ahernandez@blackbearacademy.com>, "Brad Verber"

Sent: Monday, July 16, 2012 10:56:26 AM
Subject: Re: BBA enrollment contract

Mrs. Verber,

From your previous announcement of unilaterally "terminating" the contract and then a summary from Mr. McLaughlin regarding your conversation with him both indicate to me you have no intent to pay. It's therefore prudent for Black Bear Academy (BBA) to charge the full amount.

Obviously, as you're paying for it, you may attend BBA. But if that's the case and your question is the amount charged at one time, you could pay your credit card company in installments.

Kevin Black
Co-Executive Director
Black Bear Academy

This email is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and confidential. If the reader of this email message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is prohibited. If you have received this email in error, please notify the sender and

XFINITY Connect

destroy/delete all copies of the transmittal. Thank you.

Redacted

-----Original Message-----
**From:** Kaitlin Reidy Verber ▓▓▓▓▓▓▓▓▓▓▓▓▓▓]
**Sent:** Monday, July 16, 2012 10:37 AM
**To:** kblack@blackbearacademy.com
**Cc:** 'Maureen Black', 'Annie Hernandez', 'Brad Verber'
**Subject:** Re: BBA enrollment contract

Kevin:

Please advise why our credit card was charged on June 27 when the website indicates that the first payment after the deposit is due on August 1.

**From:** kblack@blackbearacademy.com
**To:** "kaitlin verber" ▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Cc:** "Kevin Black" <kblack@blackbearacademy.com>, "Maureen Black" <2missmo@blackbearacademy.com>, "Annie Hernandez" <ahernandez@blackbearacademy.com>
**Sent:** Monday, July 16, 2012 10:21:14 AM
**Subject:** BBA enrollment contract

Dear Mrs. Verber,

I'm writing to inform you that I've directed Ken McLaughlin to no longer represent Clinical Assist DBA Black Bear in the enrollment contract matter. Please write me for all communication and needed information.

Again, we are sorry to hear your family won't be attending Black Bear, and while we understand your planning has changed, ours hasn't.

As stated in the contract and as a legal agreement upon your signature, your payment is due in full regardless of attendance. We will send you a copy of your invoice.

Sincerely,

Kevin Black
Co-Executive Director
Black Bear Academy

This email is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and confidential. If the reader of this email message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is prohibited. If you have received this email in error, please notify the sender and destroy/delete all copies of the transmittal. Thank you.

**EXHIBIT F**

Citi(R) Cards
P.O. Box 6013
Sioux Falls, SD  57117-6013

Redacted

August 01, 2012

 BRADLEY P VERBER

ACCOUNT NUMBER  4631

Dear BRADLEY P VERBER:

Thank you for contacting Citi(R) Cards.  This letter is in response to your
inquiry about the transaction described below made with account number
5466160086887369:

| Date | Amount | Description | | |
|------|--------|-------------|--|--|
| 06/27/2012 | $7000.00 | BLACK BEAR ACADEMY | 773-2440700 | IL |

After a thorough investigation on behalf of this dispute, we have came to
the conclusion that we are unable to assist you further with this matter.
The signed contract between you and the merchant clearly states "This
agreement may be cancelled in writing up to March 31, 2012." Cancellation
was not done by this date.  It also explains that after March 31st, 2012 you
will be liable for the full year's tuition and all other expenses incurred.
If you wish to pursue this matter you will have to contact the merchant.
Unfortunately we don't have any options to assist you.

We previously issued a conditional credit to your account for the amount in
question pending the outcome of our investigation.  Now that the
investigation is complete, we have rebilled your account for this charge
along with any related fees and interest charges.  All adjustments will
appear on your statement within 2 billing periods.

While we realize your account may be in good standing, Federal Regulations
require us to remind you that we may report your account as past due to the
consumer reporting agencies listed below if we do not receive the minimum
payment by the due date shown on your billing statement.

Experian
P.O. Box 2002
Allen, TX
75013-0036

TransUnion LLC
Consumer Relations Center
P.O. Box 1000
Chester, PA
19022

Equifax Credit
Information Services
P.O. Box 740241
Atlanta, GA
30374-0241

Sincerely,

Customer Service Team
FEDERAL REGULATIONS REQUIRE THE STATEMENT PRINTED ON THE REVERSE SIDE.
Enc.
/FRFRM04E/L1/TN/ER/5215/rc35425/D-500923010712//

The federal Equal Credit Opportunity Act prohibits creditors from
discriminating against credit applicants on the basis of race, color,
religion, national origin, sex, marital status, age (provided the
applicant has the capacity to enter into a binding contract); because
all or part of the applicant's income derives from any public
assistance program; or because the applicant has in good faith
exercised any right under the Consumer Credit Protection Act.  The
federal agency that administers compliance with this law concerning
this creditor is the Office of the Comptroller of the Currency,
Customer Assistance Unit, 1301 McKinney Street, Suite 3450, Houston, TX
77010.

The creditor is Citibank, N.A., 701 E. 60th St. N., Sioux Falls, SD
57104.  Please direct any questions to the return address on the
reverse side of this letter.

CITIBANK
CUSTOMER SERVICE
PO Box 6013
Sioux Falls SD 57117-6013

<u>**EXHIBIT G**</u>

Redacted

Citi(R) Cards
P.O. Box 6013
Sioux Falls, SD  57117-6013

August 01, 2012

BRADLEY P VERBER 

ACCOUNT NUMBER
▓▓▓▓▓▓▓▓4631

Dear BRADLEY P VERBER:

Thank you for contacting Citi(R) Cards.  This letter is in response to your
inquiry about the transaction described below made with account number
5466160086887369:

| Date | Amount | Description |
|---|---|---|
| 06/27/2012 | $2563.00 | BLACK BEAR ACADEMY    773-2440700    IL |

After a thorough investigation on behalf of this dispute, we have come to
the conclusion that we are unable to assist you further with this matter.
The signed contract between you and the merchant clearly states "This
agreement may be cancelled in writing up to March 31, 2012." .  Cancellation
was not done by this date.  It also explains that after March 31st, 2012 you
will be liable for the full year's tuition and all other expenses incurred.
If you wish to pursue this matter you will have to contact the merchant.
Unfortunately we don't have any options to assist you.

We previously issued a conditional credit to your account for the amount in
question pending the outcome of our investigation.  Now that the
investigation is complete, we have rebilled your account for this charge
along with any related fees and interest charges.  All adjustments will
appear on your statement within 2 billing periods.

While we realize your account may be in good standing, Federal Regulations
require us to remind you that we may report your account as past due to the
consumer reporting agencies listed below if we do not receive the minimum
payment by the due date shown on your billing statement.

Experian              TransUnion LLC            Equifax Credit
P.O. Box 2002         Consumer Relations Center Information Services
Allen, TX             P.O. Box 1000             P.O. Box 740241
75013-0036            Chester, PA               Atlanta, GA
                      19022                     30374-0241

Sincerely,

Customer Service Team
FEDERAL REGULATIONS REQUIRE THE STATEMENT PRINTED ON THE REVERSE SIDE.
Enc.
/FRFRM04E/L1/TN/ER/5215/rc35425/D-500917030712//



The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.  The federal agency that administers compliance with this law concerning this creditor is the Office of the Comptroller of the Currency, Customer Assistance Unit, 1301 McKinney Street, Suite 3450, Houston, TX 77010.

The creditor is Citibank, N.A., 701 E. 60th St. N., Sioux Falls, SD 57104.  Please direct any questions to the return address on the reverse side of this letter.

CITIBANK
CUSTOMER SERVICE
PO Box 6013
Sioux Falls SD 57117-6013